| Fill in this information to identify your case: |
| --- |

United States Bankruptcy Court for the:

DISTRICT OF DELAWARE

Case number *(if known)* _____  Chapter __11__

☐ Check if this an amended filing

## Official Form 201
# Voluntary Petition for Non-Individuals Filing for Bankruptcy    06/22

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.**

| | | | |
| --- | --- | --- | --- |
| 1. | **Debtor's name** | **Williams Industrial Services, LLC** | |
| 2. | **All other names debtor used in the last 8 years** Include any assumed names, trade names and *doing business as* names | | |
| 3. | **Debtor's federal Employer Identification Number** (EIN) | **20-0910406** | |
| 4. | **Debtor's address** | **Principal place of business** | **Mailing address, if different from principal place of business** |
| | | **200 Ashford Center North, Suite 425 Atlanta, GA 30338** Number, Street, City, State & ZIP Code | P.O. Box, Number, Street, City, State & ZIP Code |
| | | **DeKalb** County | **Location of principal assets, if different from principal place of business** Number, Street, City, State & ZIP Code |
| 5. | **Debtor's website** (URL) | **www.wisgrp.com** | |
| 6. | **Type of debtor** | ☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP)) ☐ Partnership (excluding LLP) ☐ Other. Specify: _____ | |

Debtor  **Williams Industrial Services, LLC**                          Case number (*if known*) _____
         Name

**7.  Describe debtor's business**   A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☑ None of the above

B. *Check all that apply*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes.

___2371___

**8.  Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7

☐ Chapter 9

☑ Chapter 11. *Check **all** that apply:*

  ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

  ☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

  ☐ A plan is being filed with this petition.

  ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

  ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

  ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9.  Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**
If more than 2 cases, attach a separate list.

☑ No.
☐ Yes.

| | District | When | Case number |
|---|---|---|---|
| | _____ | _____ | _____ |
| | _____ | _____ | _____ |

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

☐ No
☑ Yes.

| Debtor | **Williams Industrial Services, LLC** | | Case number *(if known)* | |
| | Name | | | |

List all cases. If more than 1, attach a separate list

| Debtor | **(See Schedule 1)** | Relationship | |
| District | | When | Case number, if known |

**11.  Why is the case filed in this district?**    *Check all that apply:*

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☑ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12.  Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☑ No

☐ Yes.  Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.
What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other

**Where is the property?** _____
Number, Street, City, State & ZIP Code

**Is the property insured?**

☐ No

☐ Yes.  Insurance agency _____
Contact name _____
Phone _____

---

**Statistical and administrative information**

**13.  Debtor's estimation of available funds**    *Check one:*

☑ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available to unsecured creditors.

**14.  Estimated number of creditors**

| | | |
|---|---|---|
| ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
| ☑ 200-999 | | |

**15.  Estimated Assets**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☑ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

**16.  Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☑ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

Debtor   __Williams Industrial Services, LLC__                          Case number (if known) _____
         Name

### Request for Relief, Declaration, and Signatures

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   __07 / 20 / 2023__
              MM / DD / YYYY

X _(signature)_____                    Tracy D. Pagliara
  Signature of authorized representative of debtor   Printed name

Title   **President and CEO**

**18. Signature of attorney**

X _(signature)_____                    Date __7 / 21 / 2023__
  Signature of attorney for debtor                       MM / DD / YYYY

__Mark L. Desgrosseilliers 4083__
Printed name

__Chipman Brown Cicero & Cole, LLP__
Firm name

__Hercules Plaza__
__1313 North Market Street, Suite 5400__
__Wilmington, DE 19801__
Number, Street, City, State & ZIP Code

Contact phone   __(302) 295-0192__      Email address   __desgross@chipmanbrown.com__

__4083 DE__
Bar number and State

**JOINT WRITTEN CONSENT**
**OF THE**
**BOARD OF MANAGERS**
**AND THE**
**SOLE MEMBER**
**OF**
**WILLIAMS INDUSTRIAL SERVICES, LLC**

July 21, 2023

The undersigned, constituting (i) all of the members of the Board of Managers (the "Board"), of Williams Industrial Services, LLC, a Georgia limited liability company (the "Company"), and (ii) the sole member of the Company, each hereby approve, adopt and consent to the following resolutions by joint written consent (this "Joint Written Consent"):

**Bankruptcy Cases**

WHEREAS, the Board has considered presentations by the management of, and the financial and legal advisors to, the Company regarding the liabilities and liquidity situation of the Company, the strategic alternatives available to it, and the effect of the foregoing on the Company's business, creditors, and other parties in interest;

WHEREAS, the Board has consulted with the Company's management, and financial and legal advisors and other professionals, and fully considered each of the strategic alternatives available to the Company;

WHEREAS, based on its review of all available alternatives and advice provided by such advisors and professionals, the Board has determined that it is in the best interest of the Company, its affiliates and their respective stakeholders, including creditors and other parties in interest for the Company and its affiliates to take the actions specified in the following resolutions;

WHEREAS, the Company and certain of its affiliates that are listed on Exhibit A hereto (the "Specified Affiliate") anticipate filing voluntary petitions (collectively, the "Bankruptcy Cases") under the provisions of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 10 - 1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court")or any other court having jurisdiction over the Bankruptcy Cases from time to time;

NOW, THEREFORE, BE IT RESOLVED, that in the business judgment of the Board, it is desirable and in the best interests of the Company (including a consideration of its creditors and other parties in interest) that the Company shall be, and hereby is, in all respects, authorized to file, or cause to be filed, a voluntary petition for relief commencing the Bankruptcy Cases in the Bankruptcy Court or other court of competent jurisdiction; and be it further

RESOLVED, that the Chief Executive Officer, the Chief Operating Officer, the Chief Administrative Officer, the President, any Vice President, the Secretary, the Treasurer, the General Counsel or any such other officer as may be appointed by the Board and authorized to act on behalf of the Company (each, an "Officer" and collectively, the "Officers") be, and each of them hereby is, authorized, empowered, and directed to execute and file on behalf of the Company all petitions, schedules, lists, motions, papers, or documents, and to take any and all action that they deem necessary or proper to obtain such relief, including, without limitation, any action necessary to maintain the ordinary course operation of the Company's business; and be it further

RESOLVED, that the Board has considered its fiduciary duties under applicable law in exercising its powers and discharging its duties, to act honestly and in good faith with a view to the best interests of the Company (including a consideration of its creditors and other parties in interest) as a whole, and to exercise the care, diligence, and skill that a reasonably prudent person would exercise in comparable circumstances; and be it further

*Retention of Professionals*

RESOLVED, that the Officers be, and each of them hereby is, authorized and directed to employ the law firm of Thompson Hine LLP ("Thompson Hine"), as bankruptcy counsel, to represent and assist the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights and obligations, including filing any motions, objections, replies, applications, or pleadings; and in connection therewith, each of the Officers, with power of delegation, is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain the services of Thompson Hine; and be it further

RESOLVED, that the Officers be, and each of them hereby is, authorized and directed to employ the law firm of Chipman Brown Cicero & Cole, LLP  ("Chipman Brown"), as local bankruptcy counsel, to represent and assist the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights and obligations, including filing any motions, objections, replies, applications, or pleadings; and in connection therewith, each of the Officers, with power of delegation, is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain the services Chipman Brown; and be it further

RESOLVED, that the Officers be, and each of them hereby is, authorized and directed to employ the firm of G2 Capital Advisors, LLC ("G2"), as financial advisor, to represent and assist the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights and obligations; and in connection therewith, each of the Officers, with power of delegation, is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain the services of G2; and be it further

RESOLVED, that the Officers be, and each of them hereby is, authorized and directed to employ the firm of Greenhill & Co., LLC ("Greenhill"), as investment banker, to represent and assist the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights and obligations; and in connection therewith, each of the Officers, with power of delegation, is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain the services of Greenhill; and be it further

RESOLVED, that the Officers be, and each of them hereby is, authorized and directed to employ the firm of Epiq Bankruptcy Solutions LLC ("Epic"), as notice and claims agent, to represent and assist the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights and obligations; and in connection therewith, each of the Officers, with power of delegation, is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed appropriate applications for authority to retain the services of Epiq; and be it further

RESOLVED, that the Officers be, and each of them hereby is, authorized and directed to employ

any other professionals to assist the Company in carrying out its duties under the Bankruptcy Code; and in connection therewith, each of the Officers, with power of delegation, is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers and fees, and to cause to be filed an appropriate application for authority to retain the services of any other professionals as necessary; and be it further

RESOLVED, that the Officers be, and each of them hereby is, with power of delegation, authorized, empowered, and directed to execute and file all petitions, schedules, motions, lists, applications, pleadings, and other papers and, in connection therewith, to employ and retain all assistance by legal counsel, accountants, financial advisors, and other professionals and to take and perform any and all further acts and deeds that each of the Officers deem necessary, proper, or desirable in connection with the Company's Bankruptcy Case, with a view to the successful prosecution of such case and be it further

*Cash Collateral and Adequate Protection*

RESOLVED, that the Company will obtain benefits from the use of collateral, including cash collateral, as that term is defined in section 363(a) of the Bankruptcy Code (the "Cash Collateral"), which is security for (a) that certain revolving credit facility provided to the Company and certain of its affiliates by certain financial institutions or other entities (together with their respective successors and assigns, collectively, the "Revolving Lenders"), and PNC Bank, National Association, in its capacity as agent for the Revolving Lenders (in such capacity, together with its successors and assigns, the "Revolving Agent") and (b) those certain term loans provided to the Company and certain of its affiliates by the financial institutions, other entities and investors (together with their respective successors and assigns, collectively, the "Term Loan Lenders"), and EICF Agent LLC, in its capacity as agent for the Term Loan Lenders (in such capacity, together with its successors and assigns, the "Term Loan Agent" and collectively with the Revolving Lenders, the Revolving Agent and the Term Loan Lenders, the "Secured Parties"; and be it further

RESOLVED, that in order to use and obtain the benefits of the Cash Collateral, and in accordance with section 363 of the Bankruptcy Code, the Company will provide certain liens, claims, and adequate protection to the Secured Parties (the "Adequate Protection Obligations"), as documented in a proposed order in interim and final form (the "Cash Collateral Order") and submitted for approval to the Bankruptcy Court; and be it further

RESOLVED, that the form, terms, and provisions of the Cash Collateral Order to which the Company is or will be subject, and the actions and transactions contemplated thereby be, and hereby are authorized, adopted, and approved, and each of the Officers of the Company be, and hereby is, authorized and empowered, in the name of and on behalf of the Company, to take such actions and negotiate or cause to be prepared and negotiated and to execute, deliver, perform, and cause the performance of its obligations under, the Cash Collateral Order; and be it further

RESOLVED, that the Company, as a debtor and debtor in possession under the Bankruptcy Code be, and hereby is, authorized to incur the Adequate Protection Obligations, including granting liens on its assets to secure such Obligations; and be it further

**Debtor-in-Possession Financing**

*DIP Facilities*

WHEREAS, the Company desires to establish a senior secured superpriority debtor-in-possession term loan facility (the "DIP Term Loan Facility") with certain lenders, financial institutions, and

investors (collectively with any agent, arranger and letter of credit issuer under the DIP Term Loan Facility, the "DIP Term Loan Lenders"), pursuant to the terms and conditions of which the DIP Term Loan Lenders will make delayed draw term loans and other extensions of credit available to the Company and certain of its affiliates in an aggregate principal amount not to exceed $19,500,000 (the "DIP Term Loans");

WHEREAS, the Company desires to establish a senior secured superpriority debtor-in-possession revolving credit facility (the "DIP Revolving Facility" and together with the DIP Term Loan Facility, the "DIP Facilities") with certain lenders, financial institutions and investors (collectively with any agent, arranger and letter of credit issuer under the DIP Revolving Facility, the "DIP Revolving Lenders," and together with the DIP Term Loan Lenders, the "DIP Lenders"), pursuant to the terms and conditions of which the Company and certain of its affiliates may borrow, repay and reborrow from the DIP Revolving Lenders, from time to time, certain loans (the "DIP Revolving Loans") and may procure from the DIP Revolving Lenders letters of credit, with the aggregate principal amount of DIP Revolving Loans and the aggregate face amount of letters of credit outstanding at any time not to exceed $12,000,000;

WHEREAS, the proceeds of the DIP Term Loans shall be used, among other things, for (i) general working capital purposes for the Company and its affiliates consistent with the detailed weekly budget covering the successive 13-week period prepared by the Company (the "Budget"); (ii) paying certain DIP transaction expenses and those documented fees and expenses payable to the DIP Term Loan Lenders; (iii) paying fees, costs and expenses specifically related to the Bankruptcy Cases to the extent such fees, costs and expenses are consistent with the Budget, are approved by the Bankruptcy Court, and relate solely to fees, costs and expenses of the Company's professionals (allowance of such fees shall be subject to final approval of the Bankruptcy Court) or professionals retained by the DIP Term Loan Lenders; (iv) making certain payments on account of prepetition obligations (including "critical vendor payments") of the Company and its affiliates as approved by the Bankruptcy Court; (v) paying the fees, costs and expenses of lead counsel to the official committee of unsecured creditors incurred in the investigation of the liens, security interests and claims of secured creditors as approved by the Bankruptcy Court and (vi) paying any other amounts included in the Budget, including without limitation adequate protection payments;

WHEREAS, the proceeds of the DIP Revolving Loans shall be used for, among other things, (i) general operating, corporate, and working capital purposes of the Company and its affiliates in the ordinary course of business; (ii) reasonable and documented costs, fees, and other expenses of the DIP Revolving Lenders; (iii) upon entry of an interim DIP order by the Bankruptcy Court (the "Interim DIP Order"), immediately applying the amount collected after the Interim DIP Order and prior to the final DIP order entered by the Bankruptcy Court (the "Final DIP Order") on account of the prepetition obligations owing by the Company and its affiliates (the "Interim Roll Up") and the DIP Revolving Loan obligations outstanding in accordance with the terms of the DIP Revolving Loan Documents (defined below) and the Interim DIP Order, in such order and manner determined by the DIP Revolving Lenders; and (iv) upon entry of the Final DIP Order, exchanging and substituting  the remaining amount of revolving loans outstanding under the prepetition revolving loan credit agreement on a cashless, dollar-for-dollar basis with the DIP Facility (the "Final Roll-Up");

WHEREAS, in connection with the DIP Facilities, the DIP Lenders are requiring that substantially the same guarantors (the "Existing Guarantors") that guarantee the obligations under the existing credit agreements (the "Existing Credit Agreements") (collectively, the "Guarantors" and, together with the Company and any other affiliate of the Company that grants a lien to secure the DIP Facilities, the "Loan Parties") guarantee the obligations under the DIP Facilities (including, without limitation, all obligations with respect to hedging agreements, bank products, treasury services, cash management obligations, and other similar transactions owing at any time to any of the DIP Lenders, their respective affiliates or certain other designated counterparties), on a joint and several basis (collectively, the "DIP Guaranties");

WHEREAS, as security for the obligations under the DIP Facilities, the DIP Lenders are requiring that the Loan Parties grant continuing security interests in substantially the same collateral securing the Company's and the Existing Guarantors' obligations under the Existing Credit Agreements and senior superpriority priming liens on such assets of the Loan Parties that are agreed to by the Company and the DIP Lenders (subject to exceptions and limitations to be set forth in any orders of the Bankruptcy Court concerning any of the DIP Facilities (the "DIP Financing Orders") and the other DIP Documents (as defined below) (collectively, the "DIP Collateral");

WHEREAS, in connection with the DIP Facilities and the transactions contemplated thereby, it is contemplated that the Company may execute one or more term sheets evidencing the initial terms thereof and enter into two credit agreements in such forms as may be approved by the Officers of the Company, or any one of them, and the Company, the other Loan Parties may be required to enter into certain other instruments, agreements or documents related thereto, including, without limitation, financing term sheets or proposals, intellectual property security agreements, cash collateral agreements, assignment agreements, stock powers, mortgages, deeds of trust, debentures, share pledges, pledge agreements, security agreements, guarantees, other collateral documents, reaffirmation agreements, intercreditor or subordination agreements, forbearance agreements, intercompany subordination agreements, intercompany notes, commitment letters, engagement letters, fee letters, and payoff letters in such forms as may be approved by any Officer (all of the foregoing, collectively with the DIP Guaranties, the "DIP Documents");

WHEREAS, as the Board has determined that the DIP Facilities are in the best interests of the Company (including a consideration of its creditors and other parties in interest), its affiliates  and their respective stakeholders, and, that it is in the best interests of the Company (including a consideration of its creditors and other parties in interest), its affiliates and their respective stakeholders to (i) consummate the financing contemplated by the DIP Facilities, (ii) execute and deliver the DIP Documents to which it is a party and (iii) authorize the Officers to take any and all actions as may be deemed appropriate to effect and perform the transactions contemplated hereby and thereby;

NOW, THEREFORE, BE IT RESOLVED, that (i) the DIP Facilities, in the amounts and on the terms and conditions set forth in the term sheets provided to the Board, or such other amounts, terms and conditions as deemed necessary, desirable or appropriate by any Officer, (ii) the transactions contemplated thereby (including the borrowing of loans thereunder (including pursuant to any incremental or increase facility provisions contemplated by the DIP Documents) and issuance or deemed issuance of debt thereunder) and (iii) the execution and delivery by the Company of any DIP Documents evidencing or in connection with the transactions contemplated by the DIP Facilities and the performance by the Company of all of its obligations thereunder and under the DIP Financing Orders, be, and they hereby are, in all respects, authorized, ratified, approved and adopted by the Board on behalf of the Company; and be it further

RESOLVED, that the Officers be, and each of them hereby is, authorized to, in the name of and on behalf of the Company, (i) negotiate, execute, deliver and perform the Company's obligations under the DIP Documents, including, without limitation, the granting and the reaffirmation (as applicable) of the security interests and liens in the DIP Collateral contemplated thereby, the cash collateralization (including the granting of the security interests and liens in such cash collateral pursuant thereto) and the incurrence of other obligations contemplated thereunder, and carry out the Company's duties thereunder, (ii) borrow any loans or incur other indebtedness in any amounts according to the terms of the DIP Documents, (iii) extend or renew any loans, advances or other extensions of credit or any installment of principal or interest thereof or any indebtedness owing to any DIP Lender, and (iv) negotiate, execute and deliver all other agreements, instruments and documents in connection therewith and any and all amendments, waivers or other modifications thereto and take or cause to be taken any and all such further actions, in each case on

such terms and conditions as any Officer may deem necessary, desirable or appropriate, in each case, the delivery thereof or the taking of such action by any such Officer to conclusively evidence the approval thereof by the Board; and be it further

RESOLVED, that the Company be, and hereby is, authorized and empowered and directed to grant or reaffirm (as applicable) security interests in, and pledge its right, title and interest in, substantially all present and after-acquired assets and properties of the Company, all proceeds thereof, including, real property, trademarks, patents, copyrights and licenses therefor, the capital stock of or equity interests in its subsidiaries and the proceeds of any of the foregoing, as required or contemplated by the transactions, the DIP Documents, the DIP Financing Orders and/or any of the other agreements entered into pursuant thereto or in connection therewith, or as any Officer may deem necessary, advisable or proper to carry out the terms, intents and purposes of the DIP Documents and the DIP Financing Orders, the transactions contemplated thereby and the resolutions related thereto, subject to such exceptions and limitations as set forth in any applicable DIP Document or DIP Financing Order; and be it further

RESOLVED, that the filing of financing statements and amendments and continuation statements to financing statements, other filings, recordations, registrations or any other document, in any jurisdictions or with any filing offices as contemplated by or specified in the relevant DIP Documents or otherwise advisable and/or the entering into of any other agreement or instrument, necessary or advisable to create, register or perfect the security interests granted pursuant to the relevant DIP Documents or any related transaction document is hereby authorized in such form as any Officer shall approve; and be it further

*General Authority to Implement DIP Financing Related Resolutions*

RESOLVED, that the Officers be, and each of them hereby is, authorized and empowered, on behalf of and in the name of the Company, to execute, deliver, perform, verify and/or file, or cause to be executed, delivered, performed, verified and/or filed (or direct others to do so on their behalf as provided herein) all necessary documents, including, without limitation, all petitions, affidavits, statements, schedules, motions, lists, applications, pleadings, other papers, additional security documents, guarantees, reaffirmations, control agreements, waivers of or amendments to existing documents, and to negotiate the forms, terms and provisions of, and to execute and deliver any amendments, modifications, waivers or consent to any of the foregoing as may be approved by any Officer, which amendments, modifications, waivers or consents may provide for consent payments, fees or other amounts payable or other modifications of or relief under such agreements or documents, the purpose of such amendments, modifications, waivers or consents being to facilitate consummation of the transactions contemplated by the foregoing DIP financing related resolutions or for any other purpose, and, in connection with the foregoing, to employ and retain all assistance by legal counsel, investment bankers, accountants, restructuring professionals or other professionals, and to take any and all action which such Officer or Officers deem necessary or proper in connection with the transactions contemplated by the DIP Documents or the DIP Financing Orders, including any and all action necessary or proper in connection with obtaining authorization to use cash collateral and/or debtor-in-possession financing (in such amounts and on such terms as may be agreed by any Officer, including the grant of replacement and additional liens, as is necessary or proper for the continuing conduct of the affairs of the Company and certain of its affiliates), including the DIP Facilities and refinancings or amendments thereof, with a view to the successful prosecution of the Bankruptcy Cases contemplated by these resolutions and the successful consummation of the transactions contemplated by these resolutions including, without limitation, any action necessary or proper to maintain the ordinary course operation of the Company's business; and be it further

RESOLVED, that the Officers be, and each of them hereby is, authorized to execute, deliver and perform any and all special powers of attorney as such Officer may deem necessary or desirable to facilitate consummation of the transactions contemplated by the foregoing DIP financing related resolutions,

pursuant to which such Officer will make certain appointments of attorneys to facilitate consummation of the transactions contemplated by the foregoing resolutions as the Company's true and lawful attorneys and authorize each such attorney to execute and deliver any and all documents of whatsoever nature and description that may be necessary or desirable to facilitate consummation of the transactions contemplated by the foregoing resolutions; and be it further

RESOLVED, that the Officers be, and each of them hereby is, authorized and empowered, on behalf of and in the name of the Company, to negotiate, execute deliver, record and/or file all documents, agreements and instruments (including, without limitation, (i) Uniform Commercial Code financing statements, (ii) blocked account control agreement, (iii) account control agreements, and (iv) any DIP Collateral (including one or more stock certificates (or, as applicable, other certificates) evidencing the capital stock (or other equity interest, as applicable) of its subsidiaries or notes evidencing debt owed to it (accompanied by one or more stock powers (or, as applicable, other transfer powers) or note powers duly executed in blank by any Officer))), and to do any and all other acts as may be required or as they, or any of them, may deem necessary or proper to carry out and perform, to give effect to, or to cause the Company to comply with, the terms of, or the transactions contemplated by the DIP Documents and any other related agreement or document that any Officer may deem necessary or proper to consummate the transactions contemplated by the foregoing, such Officer's performance of any such act and his or her execution and delivery of any such document, agreement or instrument to be conclusive evidence of the Company's approval thereof, and to honor and discharge its obligations thereunder; and be it further

RESOLVED, that the Officers, and each of them hereby is, authorized and empowered, on behalf of and in the name of the Company, to amend, supplement or otherwise modify from time to time the terms of any documents, certificates, instruments, agreements, financing statements, notices, undertakings or other writings referred to in the foregoing resolutions; and be it further

RESOLVED, that the Officers be, and each of them hereby is, authorized and empowered, on behalf of and in the name of the Company, to take or cause to be taken any and all such further action and to execute, deliver, perform, verify and/or file, or cause to be executed, delivered, performed, verified and/or filed (or direct others to do so on its behalf as provided herein) all such further documents, agreements, instruments, financing statements, notices, undertakings, certificates and other writings to effectuate the purpose and intent of any and all of the foregoing DIP financing related resolutions; and be it further

RESOLVED, that the Officers be, and each of them hereby is, authorized and empowered, on behalf of and in the name of the Company, to pay and direct the payment of all fees and expenses (including fees to DIP Lenders in connection with the DIP Facilities) as in the judgment of such Officer or Officers shall be necessary, proper, appropriate, desirable or advisable of such Officer or Officers to effectuate the purpose and intent of any and all of the foregoing DIP financing related resolutions; and be it further

RESOLVED, that the omission from these DIP financing related resolutions of any agreement, document or other arrangement contemplated by any of the agreements, instruments, filings or other documents described in the foregoing DIP financing related resolutions or any action to be taken in accordance with any requirement of any of the agreements, instruments, filings or other documents described in the foregoing DIP financing related resolutions shall in no manner derogate from the authority of the Officers to take all actions necessary, desirable, proper, advisable, or appropriate to consummate, effectuate, carry out or further the transaction contemplated by, and the intent and purposes of, the foregoing DIP financing related resolutions.

**Asset Purchase Agreement and Related Transactions**

WHEREAS, Williams Industrial Services Group, Inc., a Delaware corporation ("Parent") and certain of its subsidiaries, including the Williams Industrial Services Group, L.L.C, a Delaware limited liability company and the Company's sole member (the "Sole Member"), the Company, Williams Plant Services, LLC, a Georgia limited liability company ("WPS"), Construction & Maintenance Professionals, LLC, a Georgia limited liability company ("CMP"), WISG Electrical, LLC, a New York limited liability company ("Electrical"), and Williams Specialty Services, LLC, a Georgia limited liability company ("WSS" and, together with Parent, the Company, Sole Member, CMP, Electrical, WPS and WSS, the "Sellers") and wish to sell, and Energy Solutions Nuclear Services, LLC (the "Buyer"), wishes to purchase from the Sellers, substantially all of WPS's and WSS' assets, and certain of Parent's, the Sole Member's, Company's, Electrical's and CMP's assets, to the extent relating to, as applicable, (i) the business of providing a broad range of construction and maintenance services to customers in the nuclear, conventional power (fossil, hydro, natural gas), energy delivery, water and wastewater, pulp & paper, chemical, and government industries, (ii) the non-unionized pulp and paper operations solely to the extent conducted pursuant to certain contracts of WIS and (iii) the business as conducted by WPS and WSS (collectively, the "Business");


WHEREAS, after consultation with the Company's financial and legal advisors and consideration of such other factors deemed to be appropriate by the Board, each of the Board and the Sole Member has determined that the Asset Purchase Agreement to be entered into between the Sellers and the Buyer, substantially in the form provided to the Board (the "Purchase Agreement"), and the transactions contemplated thereby, are advisable and in the best interests of the Company (including a consideration of its creditors and other parties in interest);

WHEREAS, all capitalized terms that are used but not defined herein shall have the meanings ascribed to such terms in the Purchase Agreement;

WHEREAS, Sellers and Buyer intend to effectuate the transactions by the Purchase Agreement, including the purchase and sale of the Business and Transferred Assets and the assumption of the Assumed Liabilities, pursuant to Sections 363 and 365 of the Bankruptcy Code, subject to approval of the Bankruptcy Court;

WHEREAS, each of the Board and the Sole Member wishes to approve the transactions contemplated by the Purchase Agreement and certain other matters related thereto; and

NOW, THEREFORE, BE IT RESOLVED, that each of the Board and the Sole Member has determined that the terms of the Purchase Agreement and the transactions contemplated thereby, are in the best interests of, the Company; and be it further

RESOLVED, that the terms of the Purchase Agreement and the transactions contemplated thereby, are hereby approved, adopted and ratified in all respects; and be it further

RESOLVED, that the Bill of Sale, Assignment and Assumption Agreement, the IP Assignment Agreement, the Escrow Agreement, the TSA, and any other agreements, instruments or documents contemplated by the Purchase Agreement or the transactions contemplated thereby, including a substantially complete draft of a sale order of the Court, or required to be delivered at the Closing, certain of which may be attached as exhibits to the Purchase Agreement, are hereby approved, adopted and ratified in all respects; and be it further

RESOLVED, that the Officers be, and each of them hereby is, authorized and directed to execute and deliver the Purchase Agreement, including all exhibits and schedules attached thereto, in the name and

on behalf of the Company with such additions, deletions, or changes therein (including, without limitation, any additions, deletions, or changes to any schedules or exhibits thereto), as the Officers executing the same shall approve, their approval thereof to be conclusively evidenced by the execution and delivery of the Purchase Agreement, and such exhibits and schedules attached thereto, in each case, in the name of and on behalf of the Company, and to perform the obligations of the Company thereunder, and all actions taken by such Officers in furtherance of the foregoing before the date hereof are hereby approved and ratified in all respects; and be it further

RESOLVED, that the Officers be, and each of them hereby is, authorized and directed to file the appropriate documents with all foreign, federal, state (including the State of Delaware) and local officials to be filed to implement the transactions contemplated by the Purchase Agreement as well as all other applicable filings; and be it further

RESOLVED, that the Officers be, and each of them hereby is, authorized and directed to execute and deliver the Purchase Agreement in the name of and on behalf of the Company, and to perform the obligations of the Company thereunder, with such additional changes to the Purchase Agreement as the Officers executing the same shall approve, their approval thereof to be conclusively evidenced by the execution and delivery of the Purchase Agreement and all actions taken by such Officers before the date hereof are hereby approved and ratified in all respects; and be it further

RESOLVED, that the Officers be, and each of them hereby is, authorized and directed to file the appropriate documents with all foreign, federal, state (including the State of Delaware) and local officials to be filed to implement the transactions contemplated by the Purchase Agreement as well as all other applicable filings; and be it further

RESOLVED, that the Officers be, and each of them hereby is, authorized and directed to make, execute, file and deliver any and all consents, certificates, documents, instruments, amendments, papers or writings as may be required to comply with any federal or state securities or corporation law in connection with or in furtherance of the foregoing, and to do any and all other acts necessary or desirable to effectuate the foregoing resolutions, the execution and delivery thereof by such Officer or Officers to be deemed conclusive evidence of the approval by the Company of the terms, provisions and conditions thereof; and be it further

RESOLVED, that the Officers be, and each of them hereby is, authorized and directed to make, execute, file and deliver, in the name of and on behalf of the Company, and any all consents, certificates, documents, applications, instruments, amendments, papers or writings as may be required to effect the transactions contemplated by the Purchase Agreement and to do any and other acts necessary or desirable in connection with the transactions contemplated by the Purchase Agreement; and be it further

**General Authorizations**

RESOLVED, that the Officers be, and each of them hereby is, authorized from time to time to do, or cause to be done, all such other acts and things and to execute, deliver and, if applicable, file with the appropriate regulatory agencies, all such certificates, agreements, instruments, applications, schedules, forms and documents in the name of and on behalf of the Company, including, without limitation, all papers relating to the transactions contemplated by the Purchase Agreement, the Bankruptcy Cases and the DIP Financing, and to pay all related fees and expenses, as each such Officer shall deem necessary or appropriate to consummate the transactions contemplated by the Purchase Agreement, the Bankruptcy Cases, and the DIP Financing, and to otherwise carry out the intent and accomplish the purposes of the foregoing resolutions; and be it further

RESOLVED, that any actions taken by the Officers prior to the adoption of the foregoing resolutions, in connection with the matters described therein, be, and each of them hereby are, ratified, confirmed and approved in all respects; and be it further

RESOLVED, that the Officers be, and each of them hereby is, authorized and empowered, for and on behalf of the Company, to execute and deliver all such further documents and take all such further actions as they or any of them deem necessary, appropriate or desirable to fully carry out the intent and purposes of the foregoing resolutions, the execution and delivery or taking conclusively to evidence the necessity, appropriateness or desirability thereof; and be it further

RESOLVED, that all acts lawfully done or actions lawfully taken by any Officer, or by any employees or agents of the Company, on or before the date hereof in connections with the transactions contemplated by the foregoing resolutions be, and they hereby are, ratified, confirmed and approved in all respects by the Board; and be it further

RESOLVED, that the Board has received sufficient notice of the actions and transactions relating to the matters contemplated by the foregoing resolutions, as may be required by the organizational documents of the Company, or hereby waive any right to have received such notice; and be it further

RESOLVED, that this Joint Written Consent be inserted into the Company's minute book.

[signature page follows]

IN WITNESS WHEREOF, each of the undersigned has executed this Joint Written Consent as of the date first set forth above.

**BOARD**:

_____
Tracy D. Pagliara


_____
Charles E. Wheelock


**SOLE MEMBER**:

WILLIAMS INDUSTRIAL SERVICES GROUP, L.L.C.

By: _____
Name:       Tracy D. Pagliara
Title:        President

IN WITNESS WHEREOF, each of the undersigned has executed this Joint Written Consent as of the date first set forth above.

**BOARD**:

_____
Tracy D. Pagliara


_____
Charles E. Wheelock


**SOLE MEMBER**:

WILLIAMS INDUSTRIAL SERVICES GROUP,
   L.L.C.

By:_____
Name:     Tracy D. Pagliara
Title:      President

[Signature Page to Joint Resolutions of Williams Industrial Services, LLC]

**<u>EXHIBIT A</u>**

**SPECIFIED AFFILIATES**

1. Williams Specialized Services, LLC, a Georgia limited liability company
2. Williams Plant Services, LLC, a Georgia limited liability company
3. WISG Electrical, LLC, a New York limited liability company

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WILLIAMS INDUSTRIAL SERVICES GROUP INC., *et al.*,[1] | Case No. 23-##### |
| Debtors. | (Joint Administration Requested) |

### SCHEDULE I: PENDING BANKRUPTCY CASES FILED BY THE DEBTOR AND AFFILIATES OF THE DEBTOR

The following list identifies all the affiliated entities, including the debtor filing this petition (collectively, the "Debtors"), that filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware contemporaneously with the filing of this petition. The Debtors have moved for joint administration of these cases under the case number assigned to the chapter 11 case of *Williams Industrial Services Group Inc.*

| Debtor Name | Relationship |
|---|---|
| Williams Industrial Services Group Inc. | Parent |
| Global Power Professional Services Inc. | Wholly owned direct subsidiary |
| Williams Industrial Services Group, LLC | Wholly owned direct subsidiary |
| Williams Industrial Services, LLC | Wholly owned indirect subsidiary |
| Williams Specialty Services, LLC | Wholly owned indirect subsidiary |
| Williams Plant Services, LLC | Wholly owned indirect subsidiary |
| WISG Electrical, LLC | Wholly owned indirect subsidiary |
| Williams Global Services, Inc. | Wholly owned indirect subsidiary |
| Construction & Maintenance Professionals, LLC | Wholly owned indirect subsidiary |
| Steam Enterprises, LLC | Wholly owned direct subsidiary |
| GPEG, LLC | Wholly owned direct subsidiary |
| WISG Canada Ltd. | Wholly owned indirect subsidiary |
| WISG Nuclear Ltd. | Wholly owned indirect subsidiary |
| WISG Electrical Ltd. | Wholly owned indirect subsidiary |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

**Fill in this information to identify the case:**

Debtor Name:   Williams Industrial Services Group Inc., et al.

United States Bankruptcy Court for the:   District of Delaware

Case Number (If known):

☐ Check if this is an amended filing

## Official Form 204

### Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders

12/15

A consolidated list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | UNITED RENTALS-PAYMENT CENTER P O BOX 100711 ATLANTA, GA 30384 | CONTACT: CHIEF FINANCIAL OFFICER PHONE: 404-607-8370 RBEMMET1@UR.COM | TRADE DEBT | | | | $1,294,478.56 |
| 2 | KBH SOLUTIONS LLC 2400 HERODIAN WAY SE SUITE 220 SMYRNA, GA 30126 | CONTACT: TARUN GANERIWAL, CEO PHONE: 404-964-1355 TARUN@KBHINDUSTRIAL.COM | TRADE DEBT | | | | $1,105,406.87 |
| 3 | JOHNSON CONTRACTORS, INC. 3635 2ND STREET MUSCLE SHOALS, AL 35661 | CONTACT: THOMAS COUNTS, PRESIDENT PHONE: 256-383-0313 RLAMBERT@JOHNSONCONT.COM | TRADE DEBT | | | | $928,000.00 |
| 4 | AUGUSTA INDUSTRIAL SERVICES 15 LOVERS LANE AUGUSTA, GA 30901 | CONTACT: CLYDE PILCHER, CEO PHONE: 706-798-8437 G.LUCAS@AUGUSTAINDUSTRIAL.COM | TRADE DEBT | | | | $580,244.84 |
| 5 | COGBURN BROS INC 3300 FAYE ROAD JACKSONVILLE, FL 32226 | CONTACT: LARRY COGBURN, PRESIDENT PHONE: 904-358-7344 TLITTLEPAGE@COGBURNBROS.COM | TRADE DEBT | | | | $396,918.50 |
| 6 | HERC RENTALS PO BOX 936257 ATLANTA, GA 31193 | CONTACT: TIMOTHY UNDERWOOD, PRESIDENT PHONE: 866-645-3693 TIMOTHY.UNDERWOOD@HERCRENTALS.COM | TRADE DEBT | | | | $388,388.75 |

Debtor: Williams Industrial Services Group Inc., et al.          Case Number (If known):

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 7 | BAUMERT SAS 50 RUE PRINCIPALE SCHAEFFERSHEIM, ZZ 67150 | CONTACT: REMY SCHMIDT, CEO PHONE: 330-388-6466 -00 JULIEN.SEYLER@BAUMERT.FR | TRADE DEBT | | | | $383,441.17 |
| 8 | THOMPSON BUILDING WRECKING CO 631 11TH STREET AUGUSTA, GA 30901 | CONTACT: HIRIAM E THOMPSON, PRESIDENT PHONE: 706-722-1432 JANE@THOMPSONWRECKING.COM | TRADE DEBT | | | | $317,000.00 |
| 9 | MARTIN MARIETTA MATERIALS 2710 WYCLIFF ROAD RALEIGH, NC 27607 | CONTACT: ROSELYN R BAR, SVP & GENERAL COUNSEL PHONE: 919-783-4603 SOUTHEASTDIVISION.CREDIT@MARTINMARIETTA.COM | TRADE DEBT | | | | $287,727.04 |
| 10 | CIGNA HEALTHCARE ACCT 630873 PO BOX 188037 CHATTANOOGA, TN 37422 | CONTACT: CHIEF FINANCIAL OFFICER PHONE: 800-997-1654 CIGNASUPPLEMENTALBILLING@CIGNA.COM | INSURANCE | | | | $279,036.76 |
| 11 | SUNBELT RENTALS P O BOX 409211 ATLANTA, GA 30384 | CONTACT: ARJEN FOK, DIRECTOR PHONE: 800-667-9328 SEAN.SPRAETZ@SUNBELTRENTALS.COM | TRADE DEBT | | | | $272,843.48 |
| 12 | WA STATE DEPARTMENT OF REVENUE P.O. BOX 34054 SEATTLE, WA 98124 | CONTACT: DIRECTOR OF THE DEPARTMENT OF REVENUE PHONE: 206-727-5300 FAX: 206-727-5319 WAUCPHOLDERS@DOR.WA.GOV | TAX | | | | $257,124.92 |
| 13 | FERGUSON ENTERPRISES INC FEI-ORLANDO WATERWORKS 126 P O BOX 100286 ATLANTA, GA 30384 | CONTACT: VICTOR RODRIGUEZ PHONE: 800-721-2590 VICTOR.RODRIGUEZ1@FERGUSON.COM | TRADE DEBT | | | | $195,064.32 |
| 14 | RETUBECO 6024 OOLTEWAH GEORGETOWN ROAD OOLTEWAH, TN 37363 | CONTACT: EDWARD E OVERMYER, PRESIDENT PHONE: 423-238-4814 SALES@RETUBECO.COM | TRADE DEBT | | | | $193,389.62 |
| 15 | OLEARY CONSTRUCTION INC 1830 GILFORD AVE NEW HYDE PARK, NY 11040 | CONTACT: MICHAEL OLEARY, PRESIDENT & CHAIRMAN OF THE BOARD PHONE: 516-775-6161 DARCIE@OLEARYCONSTRUCTION.COM | TRADE DEBT | | | | $190,679.71 |
| 16 | DEPT OF LABOR AND INDUSTRIES P O BOX 24688 SEATTLE, WA 98124 | CONTACT: JOEL SACKS, DIRECTOR PHONE: 360-902-5800 TUMWATER@LNI.WA.GOV | REGULATORY | | | | $178,561.06 |
| 17 | COMPLETE SERVICE WELL DRILLING 9785 WELL WATER RD JACKSONVILLE, FL 32220 | CONTACT: IRA J MERRITT III, PRINCIPAL PHONE: 904-696-8635 CECIL@JAXWELLDRILLING.COM | TRADE DEBT | | | | $164,269.25 |

Debtor: Williams Industrial Services Group Inc., et al.          Case Number (if known):

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 18 | IRONSIDE DEVELOPMENTS LLC 4520 WILLIAMHURST LN LEAGUE CITY, TX 77573 | CONTACT: JOSH HERNANDEZ, PRINCIPAL PHONE: 713-701-9015 JOSH.HERNANDEZ@GMAIL.COM | TRADE DEBT | | | | $155,552.01 |
| 19 | EK BIRKEN MASONRY, INC 11747 PHILLIPS HIGHWAY SUITE 301 JACKSONVILLE, FL 32256 | CONTACT: ERIC KELLEY, FOUNDER PHONE: 904-746-3335 ERIC@EKBMASONRY.COM | TRADE DEBT | | | | $155,182.50 |
| 20 | KMC CONSTRUCTION INC PO BOX 1964 MADISON, MS 39130 | CONTACT: SCOTT THAGGARD, PRINCIPAL PHONE: 601-709-4604 STHAGGARD@MORGANCONCRETE.NET | TRADE DEBT | | | | $151,806.99 |
| 21 | CLARION ELECTRICAL 22803 SCHIEL RD CYPRESS, TX 77433 | CONTACT: MIKE LEACH, PRESIDENT PHONE: 713-858-7337 MLEACH@CLARIONELEC.COM | TRADE DEBT | | | | $143,033.90 |
| 22 | INTERNATIONAL DUROS STEEL 7530 103RD ST. SUITE 5 JAX, FL 32210 | CONTACT: INGRID LA CRUZ, PRINCIPAL PHONE: 859-652-1475 INTERDUSTEEL@GMAIL.COM | TRADE DEBT | | | | $141,250.00 |
| 23 | HUDSON ELEVATOR GROUP 963 VAN DUZER STREET STATEN ISLAND, NY 10304 | CONTACT: BRIAN FARLEY, CEO & PRESIDENT PHONE: 718-720-6600 MFARLEY@HUDSONELEVATOR.COM | TRADE DEBT | | | | $133,000.00 |
| 24 | HDS WHITE CAP CONST SUPPLY 5409-100 BROADWAY AVENUE JACKSONVILLE, FL 32254 | CONTACT: JOHN STEGEMAN, CEO PHONE: 800-944-8322 WCACH@HDSUPPLY.COM | TRADE DEBT | | | | $120,854.30 |
| 25 | SMITH INDUSTRIAL SERVICE, INC 2001 1. I-65 SERVICE RD, N MOBILE, AL 36618 | CONTACT: RUSS ACKERMAN, GM PHONE: 251-471-4315 RACKERMAN@SMITHIND.COM | TRADE DEBT | | | | $119,411.81 |
| 26 | EVERSOURCE ENERGY PO BOX 270 HARTFORD, CT 06141 | CONTACT: BRENDA LEJA PHONE: 800-286-5000 BRENDA.LEJA@EVERSOURCE.COM | TRADE DEBT | | | | $118,083.18 |
| 27 | INTERNATIONAL PLANT SVCS LLC 1602 OLD UNDERWOOD RD LA PORTE, TX 77571 | CONTACT: KARIM AYED, CEO PHONE: 281-867-8400 INFO@INTLPLANTSERVICE.COM | TRADE DEBT | | | | $116,242.75 |
| 28 | ARGOS USA LLC 700 PALMETTO STREET JACKSONVILLE, FL 32202 | CONTACT: SIMON BATES, CEO PHONE: 678-368-4300 BCLARK@ARGOS-US.COM | TRADE DEBT | | | | $114,556.16 |
| 29 | COMPLETE MOBILE HOME SETUP,LLC PO BOX 788 HULL, GA 30646 | CONTACT: CHIEF FINANCIAL OFFICER PHONE: 706-543-9448 CMHS13@ME.COM | TRADE DEBT | | | | $109,000.00 |

Debtor:  Williams Industrial Services Group Inc., et al.          Case Number  (if known):

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 30 | SOUTHEASTERN SYSTEMS TECH 566 SIMPSON DR BAXLEY, GA  31513 | CONTACT: LAMAR TURNER, PRESIDENT PHONE: 912-366-9525 LEEF@SESYSTEMTECH.COM | TRADE DEBT | | | | $101,059.00 |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WILLIAMS INDUSTRIAL SERVICES GROUP INC., *et al.*,[1] | Case No. 23-##### |
| Debtors. | (Jointly Administered) |

## OMNIBUS CORPORATE OWNERSHIP STATEMENT

Pursuant to rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, Williams Industrial Services Group, Inc, on behalf of itself and its affiliates as debtors and debtors-in-possession (collectively, the "Debtors"), respectfully represents:

1. 23.5% of Williams Industrial Services Group Inc. is owned by Wynnefield Affiliates.[2] Pursuant to Fed. R. Bankr. Proc. 7007.1, to the best of the Debtors' knowledge, no parent corporation or publicly held corporation that owns 10% or more of the stock of Williams Industrial Services Group Inc.

2. 100% of Williams Industrial Services Group, LLC is owned by Williams Industrial Services Group Inc.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

[2] "Wynnefield Affiliates" means Wynnefield Partners Small Cap Value, L.P., Wynnefield Capital Management, LLC, Wynnefield Partners Small Cap Value, L.P. I, Wynnefield Small Cap Value Offshore Fund, Ltd., Wynnefield Capital, Inc. Based on a Form 4 filed with the SEC on September 2, 2022 and a Schedule 13D/A filed August 31, 2020. The shares reported include (i) 2,119,632 shares of common stock (the "Partner Shares") held by Wynnefield Partners Small Cap Value, L.P., of which Wynnefield Capital Management, LLC is the sole general partner and, accordingly, may be deemed to beneficially hold the Partner Shares; (ii) 2,509,488 shares of common stock (the "Partner I Shares") held by Wynnefield Partners Small Cap Value, L.P. I, of which Wynnefield Capital Management, LLC is the sole general partner and, accordingly, may be deemed to beneficially hold the Partner I Shares; (iii) 1,576,936 shares of common stock (the "Offshore Shares") held by Wynnefield Small Cap Value Offshore Fund, Ltd., of which Wynnefield Capital, Inc. is the sole investment manager and, accordingly, may be deemed to beneficially hold the Offshore Shares; and (iv) 255,276 shares of common stock (the "Plan Shares") held by Wynnefield Capital, Inc. Profit Sharing & Money Purchase Plan (the "Wynnefield Plan"), an employee profit sharing plan. Each of the entities directly holding common stock reported sole voting and sole dispositive power over such shares. Wynnefield Capital Management, LLC reported sole voting and sole dispositive power over the Partner Shares and the Partner I Shares. Nelson Obus and Joshua Landes are the co-managing members of Wynnefield Capital Management, LLC and, accordingly, may be deemed to beneficially hold the Partner Shares and the Partner I Shares and share the power to direct the voting and disposition of such shares. Wynnefield Capital, Inc. reported sole voting and sole dispositive power over the Offshore Shares. Mr. Obus and Mr. Landes are executive officers of Wynnefield Capital, Inc. and, accordingly, may be deemed to beneficially hold the Offshore Shares and share the power to direct the voting and disposition of such shares. Mr. Obus and Mr. Landes are co-trustees of the Wynnefield Plan and, accordingly, may be deemed to beneficially hold the Plan Shares and share the power to direct the voting and disposition of such shares. The principal business address of the reporting persons is 450 Seventh Avenue, Suite 509, New York, New York 10123.

00054277.3

3.    100% of Global Power Professional Services, Inc. is owned by Williams Industrial Services Group Inc.

4.    100% of Steam Enterprises, LLC is owned by Williams Industrial Services Group Inc.

5.    100% of GPEG LLC is owned by Williams Industrial Services Group Inc.

6.    100% of Williams Industrial Services, LLC is owned by Williams Industrial Services Group, LLC

7.    100% of Williams Specialty Services, LLC is owned by Williams Industrial Services Group, LLC

8.    100% of Williams Plant Services, LLC is owned by Williams Industrial Services Group, LLC

9.    100% of WISG Electrical, LLC is owned by Williams Industrial Services Group, LLC

10.    100% of Williams Global Services, Inc. is owned by Williams Industrial Services Group, LLC

11.    100% of Construction & Maintenance Professionals, LLC is owned by Williams Industrial Services Group, LLC

12.    100% of WISG Canada Ltd. is owned by Williams Industrial Services Group, LLC

13.    100% of WISG Nuclear Ltd. is owned by WISG Canada Ltd.

14.    100% of WISG Electrical Ltd. is owned by WISG Canada Ltd.

**Fill in this information to identify the case:**

Debtor name     **Williams Industrial Services, LLC**

United States Bankruptcy Court for the:   DISTRICT OF DELAWARE

Case number (if known)

☐ Check if this is an
amended filing

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐     *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
☐     *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
☐     *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
☐     *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
☐     *Schedule H: Codebtors* (Official Form 206H)
☐     *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
☐     Amended *Schedule*
☑     *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
☑     Other document that requires a declaration   **Corporate Ownership Statement**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   **07 | 20 | 2023**   X _____
                                                              Signature of individual signing on behalf of debtor

                                                              **Tracy D. Pagliara**
                                                              Printed name

                                                              **President and CEO**
                                                              Position or relationship to debtor